Gray v. Reynolds.

George R. Gray, receiver of the United States Credit System Company, appellant,

*v.*

L. M. Reynolds, trading under the firm name of L. M. Reynolds & Company, respondent.

1. A policyholder in a company insuring traders against losses occurring through the insolvency of their customers cannot recover for losses sustained after the company's insolvency, whether on sales made by him before or after the date, but is only entitled to a return of the unearned premium, there being no reserved value to the policy, nor any method of reinsuring.

2. Dixon, J., dissents as to sales made before the company's insolvency.

On appeal from an order of the court of chancery.

*Mr. Howard W. Hayes,* for the appellant.

*Mr. Edward A. Day,* for the respondent.

The opinion of the court was delivered by

Depue, J.

The respondents are merchants carrying on business in Virginia. The United States Credit System Company is a corporation of this state, incorporated in 1888. The business for

which this corporation was created was the issuing of certificates of guarantee, which may be called contracts of insurance, or indemnity to traders for losses incurred by the failure of their customers who are debtors to the traders and become insolvent. A policy issued by this company runs for one year and covers losses on goods sold during that year by the insolvency of their customers during that year; in other words, the goods must be sold and the insolvency of the customer must also occur during the period of time covered by the policy. Losses incurred after the certificate expires, on sales made during its term, are provided for by other parts of the contract not material to this case. The vice-chancellor very properly describes the kind of insurance undertaken by this company as *sui generis*. Indeed, so peculiar is the system of insurance engaged in by this company that its contracts of insurance appear to be protected as its exclusive property by a copyright. In this adventure there is no reserve fund to meet the obligations it incurs, no surrender value and no opportunity for reinsurance in other companies.

The complainants took out a policy, No. L 169, dated and issued May 24th, 1894. This policy covered the period from June 1st, 1894, to May 31st, 1895. The company became insolvent August 23d, 1894. The order appointing a receiver adjudges that upon that day the company was insolvent. The day on which insolvency occurred, as adjudged by the order appointing a receiver, fixes the time to which the several claims of creditors must be referred for adjustment. *Mayer v. Attorney-General, 5 Stew. Eq. 815.* The complainants presented to the receiver a claim of $517.60, which was the amount of loss actually suffered on goods sold during the continuance of the policy up to the date of insolvency, which was allowed. They also presented claims for losses on goods sold after the policy was issued, where the losses were incurred after the insolvency of the company, to the amount of over $2,000. The latter the receiver disallowed.

On appeal to the court of chancery the vice-chancellor set aside the adjudication of the receiver in the latter respect. The vice-chancellor very properly held that under the scheme of

Gray v. Reynolds.

insurance there was no reserve value to the policies and that it did not appear that it was possible to reinsure in any solvent company so as to put the insured on the same footing he occupied at the time of the insolvency of the company.

The vice-chancellor also held that where no provable loss had occurred either at the time of the insolvency or at the time of exhibiting final proof of loss, the only method of fixing the loss occasioned by the breach of the contract was to assume that the premium paid was a fair price for the risk, and the risk was equally distributed throughout the period covered by the certificate, and that a rebate of that portion of the premium which represented the unexpired term of the policy would be a practical method of determining the amount of damage to the insured.

But the vice-chancellor also held that where the loss has actually occurred after the date of the insolvency, but before the exhibition of the final proof of loss, the occurrence of such an event was competent evidence in respect to the value of the policy at the date of the insolvency, and that the method of ascertaining such value was the amount of such losses, with a rebate of interest from the time they were payable, back to the date of the insolvency; and that as to the losses that happened between the time the claim was presented to the receiver and the expiration of the policy, the insured should have a right to prove them on the hearing of his appeal, as showing the amount of his loss, and that there was no distinction between losses happening on merchandise shipped after the insolvency of the company and on that shipped before.

These conclusions of the vice-chancellor, if sustained, must rest upon the assumption that the policyholders were entitled to treat the insurance company as a going concern until all its policies expired. In this view, with respect to companies of this character, we cannot concur.

The order in the insolvency proceedings put an end to the business of the company and terminated its contracts, leaving the holders of policies to be indemnified as indemnity might be awarded. Any other view would compel the creditors of the company to continue the insurance business with the property

and funds of the company, which the insolvency proceedings contemplate shall be divided among the creditors as of the time when the insolvency occurred; and there being no reserve value to the policies and no method of obtaining reinsurance, the only practical mode of determining the compensation to be made to the insured, where no provable loss had occurred at the time of the insolvency, would be by a rebate of that portion of the premium which represented the unexpired term of the policy.

This view of the nature and effect of policies where the insolvency of the company had occurred, was adopted by the supreme court of Minnesota in the case of *Smith, Insurance Commissioner,* v. *National Credit Insurance Co. (April Term, 1896).*

The order appealed from should be reversed and an order entered in conformity with these views.

DIXON, J. (dissenting).

I vote to reverse this decree only so far as it allows losses resulting from sales which were made after the insolvency of the insurance company. Against such losses the insured should have guarded himself by reinsuring, for the cost of which a return of the proportionate part of the premium will be compensation.

But for losses resulting from sales made before insolvency, I find no way to indemnify the insured, except by permitting such losses to be proved, according to the terms of the policy, against the assets held by the receiver. His right to such indemnity seems indisputable, and no inequity can be done to other creditors by postponing (if necessary) the distribution of the fund, until the amount of those losses can be ascertained.

*For reversal*—DEPUE, DIXON, GARRISON, GUMMERE, LIPPINCOTT, MAGIE, VAN SYCKEL, BARKALOW, BOGERT, DAYTON, HENDRICKSON, NIXON—12.

*For affirmance*—None.